U N I T E D   S T A T E S   D I S T R I C T   C O U R T
D I S T R I C T   O F   N E W   J E R S E Y

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ   07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
      **JUDGE**

**LETTER OPINION**

December 7, 2009

Kevin Brown Liebkemann
Legal Services of New Jersey
P.O. Box 1357
Edison, NJ 08818-1357
   *(Attorneys for Plaintiff)*

Tomasina DiGrigoli
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
   *(Attorneys for Defendant)*

     RE:   *Alward v. Commissioner of Social Security*
            <u>Civil Action No. 08-3373 (WJM)</u>

Dear Counsel:

    Plaintiff Katherine Alward ("Alward") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  There was no oral argument.  Fed. R. Civ. P. 78.  For the following reasons, the Commissioner's decision is **AFFIRMED**.

**I.**      **BACKGROUND AND PROCEDURAL HISTORY**

    Plaintiff is a 53 year old female suffering from asthma, chronic pulmonary disease, hypertension, and mild sleep apnea.  (R. 95, 183, 203, 357).  She lives in Paterson, New Jersey, with her elderly aunt.  (R. 111, 323).  Alward has a high school education and for

1

ten years worked as a home health aide. (R. 293, 325). More recently, she worked as a jewelry salesperson at department stores such as Bradlees, Kohl's, and K-Mart. (R. 66-67, 324-325). She worked at Kohl's as a jewelry salesperson and cashier for two and a half to three years, until she was laid off in September 2004. (R. 324- 325). She found new work in the jewelry department at K-Mart but had to quit after only three weeks because she was hospitalized with pneumonia in early December 2004. (R. 325-326).

Upon her release from the hospital on December 3, 2004, Alward alleges that she began to experience difficulty breathing and to tire easily from activities she used to perform regularly, such as walking short distances, talking on the phone, and performing household chores. (R. 95, 327, 329, 336). She first applied for disability benefits on January 4, 2005, alleging disability since September 2004 (although she ultimately amended the onset date to December 1, 2004, when she developed pneumonia). (R. 55, 180, 326). She based her claim upon a lung condition, pneumonia, and asthma. (R. 203). She said these conditions limited her ability to work because she could no longer move around without getting tired and losing her breath. (R. 294). On her application for benefits, she described her work as a home health aide in depth but provided scant details about her work at the department stores, other than to list her salary and job title. (R. 70, 78). At a hearing on July 29, 2006, Plaintiff testified that her work at Kohl's required selling jewelry, stocking shelves, and lifting boxes weighing up to twenty-five pounds. (R. 308). At a later hearing on October 11, 2007, she testified that the boxes weighed only up to fifteen pounds. (R. 324).

Plaintiff's treating physician was Dr. Antonio Rizzo. (R. 69). He diagnosed her with asthma and hypertension on December 22, 2004. (R. 178). He stated in separate April 2005 reports that her asthma was under fair control and that she could not work. (R.138, 171).

In February and March 2005, Plaintiff underwent two pulmonary function tests. The first, conducted by Dr. Rizzo, showed that her pulmonary function was close to normal. (R. 154, 156, 358). Dr. Michael Pollack, a state- agency physician, ordered a second pulmonary function test in March 2005. (R. 127-133). This test revealed moderate restrictive airway disease and showed that Plaintiff's pulmonary function was close to the listing level that would qualify her as disabled under the law. (R. 358). However, two additional pulmonary function tests conducted in January and July 2007 showed function that was normal or close to normal. (R. 358).

In a report issued by Dr. Pollack on March 29, 2005, he diagnosed Alward with asthma and hypertension. (R. 126). He noted that she had a history of shortness of breath, wheezing, coughing, and nocturnal awakenings. (R. 125). However, the report also showed that she had only one hospital/ emergency room visit for asthma in the past two years and none for hypertension. (R. 125).

In April 2005, Plaintiff was evaluated by Dr. R. Buske, a state- agency physician. (R. 139). Dr. Buske examined Plaintiff's records and offered an opinion but did not treat her directly. Buske also diagnosed Plaintiff with asthma and hypertension and set the following limitations on her functional capacity: (1) occasionally lift and/ or carry ten

pounds; (2) frequently lift and/ or carry ten pounds; (3) stand and/ or walk at least two hours in an eight-hour day (four hours suggested); (4) and sit about six hours in an eight-hour workday.  (R. 140).  Buske noted that her pulmonary function did not meet the listing level for lung disease.  (R. 140).  He also noted that her work environment should be limited to avoid concentrated exposure to extreme heat or cold, wetness, humidity and fumes, odors, dusts, gases, and poor ventilation due to her asthma.  (R. 143).  Finally, he concluded that some of her reported symptoms were in proportion to the severity expected but that others were not "wholly supported" by the medical record.  (R. 144).

In July 2005, Plaintiff was referred to Dr. Vazir for evaluation of her complaints of shortness of breath and excessive sleepiness.  (R. 163).  Dr. Vazir recommended that Alward continue nebulized treatments for her underlying airway disease and found that her "pulmonary function testing is not indicative of any severe disease."  (R. 163).  The results of a November 2005 polysomnography study revealed mild sleep apnea.  (R. 357).

In December 2007, Plaintiff was examined by Dr. Jalal Najafi.  (R. 284).  He also reviewed all her records.  (R. 284).  He diagnosed her with bronchial asthma, hypertension, gastroesophageal reflux disorder, and a history of sleep apnea.  (R. 285).  He found that her pulmonary impairments were mild.  (R. 285).  He also opined that Alward was disabled "as per her job description applies."  (R. 286).

At hearings in October 2007 and January 2008, Dr. Martin Fechner, a state- agency physician, testified about Alward's case.  (R. 355).  He reviewed the medical exhibits but never examined her directly.  Dr. Fechner agreed with the previous diagnoses of asthma, high blood pressure, and obstructive sleep apnea.  He testified that Plaintiff was taking proper medications for asthma and that her medical records showed no hospitalizations or emergency room visits for asthma, indicating that it was well-controlled.  (R. 340).  He opined that Alward had no impairment or combination of impairments equaling any listed impairment, that she could perform light work, and that she could lift ten pounds frequently or twenty pounds occasionally.  (R. 343, 358).  He noted that Plaintiff's complaints of dizziness were not substantiated by the medical records.  (R. 358).  He stated that if she felt dizzy, she should avoid high places and dangerous machinery.  (R. 359).

Plaintiff applied for SSI and DIB on December 19, 2004.  Her claims were denied initially on April 27, 2005, and on reconsideration on October 3, 2005.  Plaintiff timely requested a hearing, and on September 29, 2006, Administrative Law Judge ("ALJ") Gerald Ryan denied her case.  After a timely appeal, on May 16, 2007, the Appeals Council remanded the case and ordered a new hearing, to give further consideration to Plaintiff's sleep disorder, the nature and severity of Plaintiff's impairments and subjective complaints, and Plaintiff's residual functional capacity ("RFC").  The new hearing was held before ALJ Michal Lissek on October 11, 2007, with a supplemental hearing on January 3, 2008.  The ALJ engaged in the typical five step process for determining whether an individual is disabled pursuant to the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Her findings at each step were as follows:(1) Plaintiff had not engaged in substantial gainful employment since the alleged onset of disability, (2) Plaintiff's impairments were severe,  (3) Plaintiff's impairments did not meet or equal any

of the listing requirements that qualify for a presumption of disability, and (4) Plaintiff could perform her past, relevant work. Therefore, the ALJ found that Plaintiff was not disabled, did not continue on to Step Five, and denied the claim. Plaintiff again appealed to the Appeals Council, which also denied her claim.

Plaintiff now appeals to the district court. Plaintiff bases her appeal on the following alleged errors of law or fact made by ALJ Lissek: (1) The ALJ failed to make legally required specific findings of the physical and mental demands of the claimant's past relevant work; (2) the ALJ failed to conduct the full and proper legal analysis of medical opinion evidence; and (3) the ALJ failed to properly evaluate the claimant's symptoms. These arguments will be addressed in turn.

## II. ANALYSIS
### A. Standard of Review

At the administrative level, a five step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires in Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the *Listing of Impairments*. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is deemed disabled *per se* and the inquiry ends; if not, the ALJ moves on to Step Four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the ALJ decides whether, despite any severe impairment(s), the claimant retains the RFC to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

The district court reviews the ALJ's application of the law *de novo*. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986). On the other hand, factual findings are reviewed to determine whether they are supported by substantial evidence. *See Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). When substantial evidence for an ALJ's factual findings exists, this Court is bound by those determinations of the ALJ. *See id.* (citing 42 U.S. § 405(g)). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Srvcs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Under the substantial evidence standard, the district court is required to review the record as a whole. *Schaudeck v. Comm'r of Soc.*

*Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). If there is more than one rational interpretation of the evidence in the record, this Court must accept the conclusions of the ALJ and affirm his decision. *See Izzo v. Comm'r of Soc. Sec.*, 186 F. Appx. 280, 284 (3d Cir. 2006). The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck*, 181 F.3d at 431.

Additionally, the Third Circuit requires an ALJ to "set forth the reasons for his decision," so that the district court can conduct meaningful judicial review. *See Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000). However, the ALJ is not required to use any particular language or follow any specific formula, as long as sufficient details are provided to allow for meaningful judicial review. *Jones*, 364 F.3d at 505.

### B. Specific Findings as to the Physical and Mental Demands of Plaintiff's Past Relevant Work

Plaintiff's first argument is that the ALJ erred by failing to make specific findings of the physical and mental demands of claimant's past relevant work. (Pl. Br. at 10). In particular, Plaintiff alleges that the ALJ was required to make factual findings pertaining to the lifting requirements, environmental exposures, and standing and walking requirements of her past relevant work, and failed to do so. (*Id.* at 11, 12, 14).

At Step Four, the ALJ must determine whether a claimant's RFC enables her to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). To arrive at this determination, the ALJ must make specific findings about the physical and mental demands of the past relevant work. *Burnett v. Comm'r*, 220 F.3d 112, 120 (3d Cir. 2000). RFC is an important determination, with far reaching implications. Social Security Ruling ("SSR") 82-62. Thus, these findings must contain sufficient detail such that a district court can meaningfully review the ALJ's conclusions. *Id.* However, there are no stringent guidelines that the ALJ must follow. *Jones*, 364 F.3d at 505. In addition, the claimant, not the ALJ, has the burden of persuasion at Step Four for establishing the demands of the past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). Finally, the regulations provide that the ALJ need only make findings that are relevant to the specific job performed by Plaintiff and that pertain to Plaintiff's current limitations. SSR 82-62.

Here, the ALJ made the following findings about Plaintiff's past relevant work: she was employed as a jewelry assistant in a retail store, where she was required to stand most of the day and lift and carry fifteen pounds. (R. 25). These findings, while not overwhelming in their amount of detail, are sufficient for the purposes of judicial review, as they show the Court that the ALJ engaged in a meaningful analysis. Moreover, they take into account all the relevant information that was available to the ALJ. The Plaintiff has the evidentiary burden at Step Four to prove the demands of her past relevant work, yet

the only relevant information she provided in her benefits applications was her job title and salary. (R. 70, 78). The only additional information in the record on this subject was Plaintiff's testimony, elicited by the ALJ, that the job required her to stand most of the day and to lift and carry boxes weighing fifteen or twenty-five pounds.[1] (R. 308, 324). Therefore, it was Plaintiff's failure to produce additional evidence about the nature of her past relevant work that prevented the ALJ's findings from containing additional detail.

Furthermore, the SSR only requires an ALJ to make factual findings about the demands of a claimant's past work that relate to his or her current limitations. SSR 82-62. Indeed, the SSR states that adequate documentation of past work includes factual information about "those work demands *which have a bearing* on the medically established limitations" (emphasis added). *Id.* The ruling also states that "detailed information about strength, endurance, manipulative ability, mental demands, and other job requirements must be obtained *as appropriate*" (emphasis added). *Id.* The ruling does not obligate an ALJ to make factual findings about aspects of a job that are not pertinent to the claimant's ailments, nor does it require an ALJ to make findings about a claimant's ability to perform certain tasks or demands that are not implicated by past relevant work.

Therefore, contrary to Plaintiff's assertions, it was not error for the ALJ to fail to discuss environmental exposures, because Plaintiff, who has the burden of persuasion at this step, put forth no evidence that work as a jewelry salesperson requires exposure to environmental irritants, heights, or hazardous materials. Additionally, the ALJ's evaluation of the lifting requirements was proper. Although Plaintiff at one point testified that her job as a jewelry assistant required her to lift boxes weighing up to twenty-five pounds, she testified more recently before ALJ Lissek that her job only required her to lift fifteen pounds. (R. 308, 324). ALJ Lissek chose to credit the second, more recent, testimony. While Plaintiff alleges that a publicly posted job listing for her former position requires the ability to lift thirty-five pounds, this information was not contained in her benefits application or in her testimony before either ALJ Ryan or ALJ Lissek. (Pl. Br. at 12). Furthermore, even if this thirty-five pound lifting requirement were accurate for the job at Kohl's, the test at Step Four includes whether or not a claimant can perform the requirements of past relevant work as generally performed in the national economy, not just as specifically performed for any one given employer. SSR 82-61; *Rivera v. Astrue*, 2008 WL 3285850 (D.N.J.). As noted in Defendant's brief, work as a jewelry salesperson is deemed "light work" in the national economy. (Dft. Br. at 25). Therefore, once the ALJ determined that Plaintiff had the residual functional capacity to perform "light work," it was not error for her to conclude that light work was consistent with the demands of her past relevant work as a jewelry assistant in a retail store. Finally, and again contrary to Plaintiff's assertions, the ALJ's opinion did address the standing/ walking requirements of

---

[1] As noted above, at the July 29, 2006 hearing, Plaintiff testified that her job as a jewelry salesperson involved lifting boxes that weighed twenty-five pounds. (R. 308). At the more recent hearing on October 11, 2007, Plaintiff said the boxes she was required to lift weighed fifteen pounds. (R. 324). The ALJ chose to credit the more recent testimony.

the job, to the extent permitted by available evidence, concluding that "as a jewelry assistant in a retail store… she was required to stand most of the day." (R. 25). The ALJ did not err with respect to considering the demands of Plaintiff's past relevant work. Furthermore, the ALJ's determination about the past relevant work is supported by substantial evidence.

### C.   Weighing and Analyzing Medical Opinion Evidence

Plaintiff next argues that ALJ Lissek improperly weighed and analyzed the medical opinion evidence when calculating her RFC. (Pl. Br. 14). Specifically, Plaintiff claims that the ALJ failed to consider the following factors as required by 20 C.F.R. § 404.1527: (1) examining relationship, (2) treating relationship (length of treatment and frequency of examination), (3) supportability, (4) consistency with the record, and (5) specialization of medical source. (Pl. Br. at 14-15).

In reaching a decision regarding a claimant's RFC, the ALJ must consider all of the evidence before her. *Burnett*, 220 F.3d at 121; *Plummer,* 186 F.3d at 429. This includes all of the medical opinion evidence. The ALJ must then weigh the credibility of the evidence and make choices between conflicting accounts. *Williams*, 970 F.2d at 1187. Next, the ALJ must give some indication of the evidence he discounts and his reasons for doing so. *Plummer*, 186 F.3d at 429; *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *Adorno,* 40 F.3d 43 at 48 (reversing an ALJ's determination for failure to mention or refute some of the contradictory medical evidence before him). While the Third Circuit recognizes the significance of treating physicians' opinions and accords them great deference, this deference is not unlimited. *Plummer*, 186 F.3d at 429-431. The regulations provide that controlling weight should be given to a treating physician's opinion only if it is well supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence of record. Moreover, certain determinations, such as a claimant's overall RFC or whether or not he is disabled, are expressly reserved to the Commissioner, and thus no special weight is given to a medical source's opinion on the issue. 20 C.F.R. § 416.927(e)(2).

Here, the ALJ concluded that Plaintiff retained the RFC to perform light work that did not involve exposure to undue amounts of dust and chemicals known to be lung irritants, extremes of temperature, or exposure to heights or dangerous machinery. (R. 20). The ALJ's finding is supported by substantial evidence, including the medical opinion evidence. Specifically, the ALJ's finding is supported by the normal clinical findings of Dr. Pollack, the normal results of the two pulmonary function tests obtained in January 2007 and July 2007, and the opinion of Dr. Fechner, who believed that Plaintiff's asthma and hypertension were well-controlled with medication, and also concluded that Plaintiff's RFC was for light work. (R. 23-25).

Furthermore, the ALJ's opinion reveals that she evaluated all of the evidence before her, considered how much weight she should give to each source based upon the reasons

put forth by Plaintiff, and explained which sources of medical opinion evidence she chose to discredit and why. (R. 23-25). The ALJ stated that she was discounting the opinion of Dr. Rizzo, Plaintiff's treating physician, who concluded that Plaintiff could not return to the type of job she formerly had and that she could not return to full time opinion employment for more than six months. (R. 24). The ALJ explained that she discounted Dr. Rizzo's opinion even though he was a treating physician because she found it to be unsupported by clinical and laboratory findings, in variance with the weight of the medical testimony, and inconsistent with his own treating records, which indicated that Plaintiff's asthma and hypertension were fairly well controlled and did not indicate any limitations with respect to standing, walking, lifting, climbing, bending, or using her hands. (R. 24). These are precisely the types of reasons for which an ALJ is entitled to discount a treating physician's opinion. *See Plummer* at 429-431. Moreover, they are precisely the types of medical opinions to which the ALJ is not permitted to give special weight, even if they come from a treating physician, because they are dispositive, administrative determinations reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e)(2). Finally, contrary to Plaintiff's assertions, the ALJ did consider the fact that Dr. Rizzo had examined Plaintiff directly, on multiple occasions between 2004 and 2007. (R. 21). Nevertheless, she found the other factors against crediting Dr. Rizzo to be more persuasive.

  Plaintiff demonstrated her reasons for discrediting the other medical opinions she chose not to follow as well. The statement by Dr. Najafi that Plaintiff was "disabled as her job description applies" is also simply not entitled to any special weight or significance, because disability is a determination reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e)(2). Despite Plaintiff's allegations, the ALJ did not ignore the opinion of Dr. Vazir; rather, she noted that he concluded Plaintiff's "pulmonary function testing was not indicative of any severe disease." (R. 21). Neither did she ignore the opinion of Dr. Buske, evidenced by her statement that she "considered the opinions of the state Agency physicians… [and] I find that their assessment for the claimant's ability to perform a reduced range of light work is not totally inconsistent with the medical record," meaning that if anything, she credited Dr. Buske's opinion. (R. 24).

  Plaintiff objects to ALJ's reliance on the opinion of Dr. Fechner, a non-examining medical advisor. (Pl. Br. at 18). However, as Defendant observes in its brief, Dr. Fechner was the only doctor to have Plaintiff's complete medical record before him, including the two pulmonary function tests from 2007 that showed Plaintiff's pulmonary function as normal, settling "the tie" that resulted after the two inconsistent and therefore inconclusive test results received in the 2005 tests. (Dft. Br. at 23). Dr. Rizzo had only been aware of the two contradictory pulmonary function tests conducted in 2005. It is evident from the transcript of the hearings that Dr. Fechner based his overall conclusions in large part on the fact that out of four pulmonary function tests conducted, three were normal and only one showed evidence of an impairment. (R. 342, 358). It is also evident from the language of the opinion that the ALJ thought that these two additional pulmonary tests were very important to her conclusion. (R. 24). This accounts for the ALJ's reluctance to rely on the medical opinions of the various physicians who did not have

access to the results from these last two tests when formulating their opinions.

The court concludes that the ALJ properly weighed and evaluated the medical opinion evidence, using the factors outlined in 20 C.F.R. § 404.1527, and that the ALJ's findings with respect to RFC are supported by substantial evidence.

### D. Evaluation of Plaintiff's Symptoms

Plaintiff's final challenge to the ALJ's determination is that the ALJ failed to consider all of Plaintiff's symptoms and instead "cherry picked" symptoms to support a finding that Plaintiff was not disabled. (Pl. Br. at 19). This claim lacks merit.

The regulations state that an evaluation of a complainant's symptoms, including pain or other subjective statements, is part of the disability evaluation. 20 C.F.R. § 416.929(a). Subjective complaints of pain must be given serious consideration. *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981). However, pain alone cannot be the basis for a finding of disability; the subjective complaints of pain must be accompanied by objective medical evidence showing the existence of a condition that reasonably could be expected to produce the alleged symptomalogy and support a finding of disability. *Williams*, 970 F.2d at 1186. It is the claimant's burden to prove that her subjective complaints of pain are substantiated by medical evidence. *See Pearson v. Barnhart*, 380 F.Supp.2d 496, 508 (D.N.J. 2005).

Here, as explained above, the language of the opinion shows that the ALJ did consider all of Plaintiff's symptoms and all of the relevant evidence. However, although she did consider it all, she did not choose to credit all of it. Her opinion more than amply explains why. (R. 23-25). In addition, the Appeals Council instructed the ALJ to review the medical records and "obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments." (R. 220). ALJ Lissek did precisely what was asked of her and obtained a qualified medical expert, Dr. Fechner, to review Plaintiff's entire record.

The ALJ's opinion makes it clear what evidence she relies upon in reaching her findings, what evidence she rejects, and why. (R. 23-25). Her evaluation of Plaintiff's symptoms is thus supported by substantial evidence and is sufficiently detailed to allow for meaningful judicial review. The Court concludes that the ALJ did not err with respect to evaluating Plaintiff's symptoms.

### III. CONCLUSION

For the reasons stated above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

                                              /s/ William J. Martini  
                                              **WILLIAM J. MARTINI, U.S.D.J.**